May it please the Court, my name is Adrian Parsons and I represent the appellant in this matter, Mr. James Dovenberg, who is present in court today. Your Honours, the question which Mr. Dovenberg is asking you to decide is whether the damage done to his ranch land by the federal government was discretionary and therefore whether the government should be immune from suit under the facts of this case. Just as a brief reminder, this damage was done during the fighting of a wildfire by the U.S. Forestry Service. Counsel, may I suggest you step back another inch or two from the microphone. It's just a little bit of feedback. Go ahead. That may be better. Is that better? Can you hear me now? Yes. Thank you. This alleged damage that Mr. Dovenberg is claiming was done primarily after the fire was contained, not during the actual fighting of the fire. And as a reminder on the facts, the ranch land owned by Mr. Dovenberg was not actually damaged during the fire. There was a very small portion that was damaged by the fire. The fire was primarily on U.S. Forestry Service land where most of the damage was done. However, our land was used as a staging area in which to fight this fire. There was damage done primarily according to our complaint and the associated documents after the fire was contained, during what the government refers to as the mop-up operations. Counsel, you've made that argument in your brief, but I was looking for the source of that in the complaint. As I understand the complaint, you never mentioned claims based on post-fire, post-firefighting activity. The language appears to be in paragraph 6, for example, in fighting the fire. Correct, Your Honor. Was the complaint ever amended? We did not amend the complaint, but what the complaint does refer to is during the time period that the firefighters were on the property. And the date that's actually used there is the end of September for the date that the damage was caused. And the very few facts that we do have on the record at this point in time indicate that the fire was probably contained in early September. Also, if you read the complaint together with the exhibit that was attached, it was the plaintiff's filing of his original documentation, the notice of claim,  that goes into a lot more detail with regard to the fact that this damage was caused not so much during the fighting of the fire, but at the whole time period that the government employees remained on our property. Well, part of the problem, it seems to me, is our case law seems to be quite favorable to the government with regard to the use of adjoining lands as staging areas while the fire is raging. And as I understand, this wildland fire, it grew to, what, 41,000 acres before it was finally... No, no, I believe it was just over 10,000 acres. All right, I thought I saw a larger number in the record. But in any event, it was a very large wildland fire, which I'm assuming at various points in time was less contained than ultimately it was when it was finally put out. Correct. The problem that I'm having is where do we draw the line? I mean, it seems to me that once firefighters enter the property in order to gain access to fight the fire, that seems to be pretty well covered by the discretionary function exception. And with wildland fires, it takes days, sometimes weeks, to put these things out. So how are we going to write an opinion that says that the discretionary function exception extends for 11 days on this particular fire, but anything done starting with day 12 is not covered by the exception? Correct, Your Honor, and I understand that problem. And we are trying to avoid the situation where we're looking at time periods here. The fact remains, though, that the government has a burden for each challenged conduct. Anything that a plaintiff challenges, it needs to justify it under Berkovitz. I mean, isn't your claim really a breach of the contract? As I understand it, the Forest Service, under very hasty conditions, comes to the landowner and presents a document that says, you know, will you please consent to allow us to do this and we promise that we'll restore your land to the condition it was in before we brought all of our men and equipment aboard. But you didn't make a breach of contract claim. Right, Your Honor, and most of our damage didn't happen on those limited acreage that that agreement related to. That agreement was, I believe, approximately five acres where the government was able to set up. They stored their equipment. It's where the firefighters were housed. Most of our damage took place on the roads over the vast extent of the property. This was, you know, Mr. Berkovitz... But doesn't the agreement contemplate damages to roads, culverts, fence lines? Your Honor, yes, but not to the degree of what actually happened. What actually happened was far greater than anything that was contemplated in that agreement. I guess I don't... Maybe I'll look at the agreement more closely. I didn't read the agreement as narrowly as you're now arguing. It related to a very small portion of the land. So that was the land where they initially set up some kind of a base camp, is that it? Correct, correct. And your complaint has to do with other land that you say is not covered by the agreement. Yes, Your Honor. The document that I think is more important to us, although not in a federal tort claim situation, is the fact that afterwards the government signed the rehabilitation repair plan. The federal government employees agreed specifically. Mr. Durdenberg was mentioned by name. They were going to come in and remediate. They were going to fix all the damage that was done. But you didn't seem to agree... But that is not a contract claim. We are not a party to that. So that document is quite a difficult document to try and figure in here. And we've used it as a means of indicating the negligence level, that the government knew what it ought to do. Well, let me go back to my first question, because I'm still having a hard time figuring out where to draw the line here. Presumably, if your client consented through the original agreement to the setting up of the base camp, they're going to have to use access roads or build roads in order to get to the fire. Correct. And we don't challenge those actions. You're not challenging that. We don't challenge those actions. So, and I guess what you're saying is the roads and the fences and the culverts were damaged more extensively than what Mr. Dovenberg hoped they would be damaged during the post-mop-up activities or the mop-up activities after the fire was under control. Correct. I think Mr. Dovenberg, and justifiably, and without conceding this, I don't think at the time he would have had the ability to prevent the Forestry Service from coming onto his land and fighting the fire. I think we have no doubt that their decision to use his land to fight the fire was discretionary, and we're not arguing that. Well, I guess what I'm troubled by, and maybe I can bring it into an urban situation, a large fire breaks out in a housing development and the fire department arrives, and they're going to do damage to perhaps adjoining houses as well as the houses that are under, that are on fire, but the law recognizes that we're going to have to break some glass and we're going to have to, you know, water damage the contents and we're going to have to chop holes in the roof and all that sort of thing while we're fighting the fire. Presumably, that's all covered by the discretionary function exception. Right, Your Honor, and the crux of what you're saying there is while fighting the fire, and that's what 99.9% of the government's argument, the government being the one that bears the burden here, of they have presented us with nothing on the record for this court to determine whether, when the damage was primarily done. We're alleging the damage was primarily after the fire was contained. There is nothing in any of the declarations that they presented, and they presented three declarations, one from a very senior employee, federal government employee, who his only testimony was that he, not testimony, it was a declaration, was that he visited the fire once. Then there are two other employees who were very involved with the fire. All their evidence, every fact that they are alleging relates to their decision to fight the fire, which are not facts that we are challenging. But you're drawing a distinction in applying the discretionary function exception that we should draw the line as long as there are flames showing and smoke. Whatever they do is covered by the exception. But isn't fighting the fire, doesn't it involve more? Doesn't it involve remediation activities in order to try and remediate the harm that the fire has caused, which necessarily includes, I'm assuming, reforestation or perhaps building some runoff ditches because when the rains come with exposed soil we're not going to have erosion problems. I mean, that's all part and parcel of what the Forest Service does when they fight a wildland fire. I would respectfully disagree with that analogy that what we're looking for here is a timeline before and after once the fire was contained, after the fire was contained. All we are requesting here is that the government provide us with something on the record to justify their actions, why they did it that way. The way it stands at the moment, we would have to guess, this court would have to guess what were the factors that it considered. I mean, the regulations are in the record that talk about not only what they do in terms of addressing the fire incident itself but what has to be done afterwards in order to restore the land as best they can to the condition that it was in before it burned. And Your Honor, there are no facts on the record in order to assist this court in arriving at the decision. And I bring us back to Berkovitz. The first prong, whether it's discretionary or not, we're not disputing that. When we look at the second prong, these actions that caused damage at a time period that we claim the fire was under control, it was contained, there was no emergency, there was no need to be rushing around causing damage to our property, they have not provided any explanation to assist the court in determining on any factual basis to assist the court in determining whether these were decisions that were based on public policy considerations which is the second prong of Berkovitz. But don't they have sort of general policy statements as to what needs to be done to the land after the fire is out? Your Honor, I think when you talk about policy statements you're looking at the first prong, which is whether it was discretionary or not, and in that situation if we can present policy or regulation to you to show that there was no discretion, we can counter the first prong. But on the second prong, that's where we look at where the government has to justify its actions, its challenged actions, by pointing to specific either social considerations, political considerations, financial considerations. It has to point somewhere on the record to some fact to show us why it was justified in doing what it's doing. There is no evidence on this particular record before this court in order for the court to arrive at that decision. The court would be guessing. In fact, all the case law is very clear that the government cannot just throw this blanket of immunity over once it's said, yeah, we've got discretionary conduct, it's firefighting, it's discretionary. To Bush, for example, uses the phrase, it cannot wave the flag of policy as a cover for anything and everything. It does. That is discretionary in nature. And we contend that that's what they're trying to do here. They will put on notice of what I argue. I just don't see the distinction that you're trying to draw. If you concede that the discretionary function exception applies to the initial decisions that the incident commander makes in committing people and equipment to fight the fire, why doesn't that same principle carry over to determinations that are made after the flames are out in order to try and address the damage that the fire has done, including how many bulldozers we're going to send in to prevent erosion, how much money we're going to spend on seedlings to reforest the land because the timber was burned. I just don't see where you draw the line there. Your Honor, in principle the line does need to be drawn somewhere. Because the government there will be situations and we contend this was one of them where the government will negligently cause damage at various times during and particularly after a situation such as firefighting. And as soon as we mention firefighting, all the warning bells go off and we're talking about discretionary conduct. That does not mean that that discretionary blanket is going to cloak all of the activities. We would like the opportunity to present to be before a fact-finding body to give us the opportunity to show that that was unrelated to the firefighting. Counsel, I think we understand your argument. You're down to less than two minutes. Do you wish to reserve? I do, Your Honor. Thank you. You may do so. We'll hear from the government. Good morning. May it please the Court, Kelly Zusman, appearing on behalf of the United States. Zusman. I think the primary complaint here appears to be that the government's response was too vague. And I think to answer that charge, we need to start with what was in the complaint. And Judge Mossman, I think if you take a good close look at his opinion, that's where he starts is trying to drill down and determine really what this complaint is about. And the complaint here challenges what the Forest Service did, not on a micro level, but on a macro level. And the Court actually sets this out in full, it's at ER 7, that the negligence claim here is in failing to properly supervise their employees and in failing to properly instruct their employees to avoid damage to the property. So in essence, the incident commander, who was charged with responsibility for all of the firefighters that were fighting this particular fire in August of 2006, that he somehow should have more rigorously supervised the people on the ground. Now, once it's characterized, once we really examine what the complaint was challenging, then I think it becomes pretty clear that all of those actions that they're challenging fall within the discretionary function exception. You've got Miller, which says that firefighting is complex, it involves a number of different priorities, strategic decisions, and then you have the other line of cases with the recent decision in Lee, Nurse, that talk about the fact that how federal agencies supervise their employees is discretionary. And the reason we can't give you anything more specific that says that is that it's covered by the Wildland Fire Analysis and the Red Book and the other materials. That is that incident commanders have a tremendous amount of discretion when they are looking at how to figure out where to put their resources, how to fight the fire, and as Mr. Batten explains, post-fire suppression remediation is an integral part of firefighting. It forms part of the priority that the Forest Service puts into determining its strategy, and it is something that falls within the incident commander's discretion. Well, my understanding, and I'm sure I'll hear differently if counsel for the plaintiff deems that I've mischaracterized her argument, but my understanding is that she's basically saying the discretionary function exception shouldn't apply here because what has occurred occurred well after any actions by the Forest Service to contain the fire or to remediate the fire, and that these were actions, and I'm not agreeing or disagreeing here, I'm just asking, that the Forest Service had an affirmative obligation to come forward and say on the record, look, these were remediation activities, these were activities we took, but that the Forest Service according to counsel for the appellant didn't do that. And therefore, there was no basis upon which the district court nor this court could find that the discretionary function exception is properly applied because there was nothing in the record to determine that what was actually done was done for the purpose of remediating the fire. We know it wasn't done, I guess the Forest Service concedes, in actually fighting the as Judge Dahlman correctly pointed out, that isn't the end of it. The remediation activities are also part of fighting the fire and making sure that you don't have a flare-up later and all of these things. But that the Forest Service never put anything in the record to indicate that what they actually did in this case was for that purpose. Now how do you respond to that? And you got a lot in there, let me try and... Well, that's true. Let me try and tease that out. That comes from being a district judge. I can appreciate that. Let me start with first the notion that we had a lot of damage that took place after the fire was out. And I think even Mr. Devenberg isn't claiming that. What he says, and this is at ER 78 to 79, is that he thought most of the damage took place after the fire was under control. Now we know from Mr. Batten's declaration that in fact the fire wasn't in his terminology fully contained until September 21st. And containment is a term of art. The fact is that the fire continues to smolder until actually the rains come. And it's not until it rains that it's finally technically out. But even with that, I think the problem here is that the timing simply isn't critical to looking at whether or not negligent supervision of employees is discretionary. Whether or not they're supervising them during the height of the fire, or whether or not they're supervising them during the mop-up, it's still supervision. There's still nothing there's no law, there's no statute, there's no regulation that says to an incident commander you must have one supervisor per ten firefighters. And make sure that they don't break stuff when they're in there. We simply don't have anything that specific. What we have are very broad guidelines that say top priority, firefighter safety. Second priority, we want to avoid damage to private property. Third priority, we want to conserve our natural resources to the extent that we can. All of those factors take place whether or not they're in the throes of fighting the fire, they're dealing with smoldering embers, or they're cleaning up. So we would all agree, I think, that if you have a fire and you have it approaching a group of homes or somebody's ranch and they need to get the bulldozers out there and knock down a whole bunch of stuff to create a fire break, that's clearly fighting the fire. There's no question about it. That's a discretionary exception issue. I don't think plaintiff's counsel would argue that. In fact, she says she doesn't have an argument about that. We would also, I think, agree that if the fire is completely out and six months later, pursuant to a meeting they have, they decide, gee, we need to go in there and tear this up and tear that up so that we don't have another fire that has a problem, that that probably is something they're going to have to compensate the owner. If they're all going to have to compensate the owner. It's the problem that's in the middle. What evidence do we have that what the fire service did was the former and not the latter? I think the evidence that we have is probably the most close answer to your question is in the Batten Declaration, where he explains that they had at most 318 people on the plaintiff's property engaging in fire suppression activities, and the date that he gives is September 21 of 2006. There's no claim that any of our firefighters were on the plaintiff's property beyond the time that they were permitted to be there. There's no trespass allegation here. To the extent we're looking for some sort of a limiting principle, the occupation of plaintiff's property all relates to that shake table complex of fires. Whether it's during fire or post fire, it all relates to the fire itself that we're talking about here. Again, there's no claim of trespass. The other thing that I want to answer in part to your question is that we're not claiming that, gosh, this is a fire, and so you can't sue us for anything. We've got cases like Marley's Bear. If, for example, we had a firefighter who negligently backed up and ran over Mr. Duvenberg's mailbox, we'd probably be liable for that. It's not rooted in policy. But again, the complaint here attacks what the incident commander did on a global level. It says, you should have used your discretion to supervise people so that when they were either putting out the fire or cleaning up after the fire, they didn't damage my property. And that's discretionary. Unless there are any further questions, I'll submit. No further questions. Thank you, counsel. Ms. Parsons, you have some reserve time. Thank you, Your Honor. I'll be brief. There are just three points I'd like to make. Firstly, regarding the cases that the government is citing, Nurse and this recent case, Lou, neither of those stand for the blanket proposition that all supervision and training of government employees is discretionary. In each of those cases, they still underwent the Burkevitz test. The court still had to look at the factual evidence presented by the government and see whether it was discretionary and therefore protected in those particular circumstances. The second point I'd like to make is that whether we're talking about discretion here or not, the government usually pays to remediate all this damage caused, whether it's during the fire or after the fire. They never pay to fix damage caused by the fire, but they pay to fix damage caused through suppression efforts. My client has received not a cent from the government in relation to the rehabilitation effort in regard to the suppression efforts of the fire. Well, that was my argument. I mean, when you're talking about suppression, but you're talking what you're I think where we've got the line here is the difference between somebody coming in later and saying, gee, in order to make sure this doesn't happen again, we've got to knock down all of these fences, and we've got to plow all this up, and we've got to turn into a giant fire break. But that's distinguished from somebody on the scene at the time saying, gee, the fire could start up again. We better create a fire break. Do you see what I'm saying? Correct, Your Honor. The damage that was caused here was not in order to prevent another fire from occurring. It was damage that was caused during the mop-up. But that doesn't help you. I think that hurts you. But unfortunately, I don't have the luxury of those facts on the record in order to make that argument. We have no facts on the record to make the argument one way or the other. But your complaint is so bereft of any specifics that you're really asking the district court, trust me, I'm going to be able to draw the line between activities that were committed during the fighting of the fire and activities that occurred after the fire was out. I don't see anything in the complaint that helps you. I believe that that's a different issue. The issue that's been raised off the bat is that the court has no jurisdiction even to determine our complaint, to see whether it's sufficient or not. Based on your bare-bones complaint, why did the district court err in dismissing it? It seems to me that you have an obligation to draft a complaint that is a bit more detailed than simply alleging that they failed to properly supervise their employees at all times while they were on the property. I do believe that the way the complaint is worded currently, it puts the government on notice of what the claims were. The time period is not specific to the fighting of the fire. It covers both pre and post. One final point is that the facts raised by my colleague relating to the fire is out when it rains. There's nothing to that effect on the record, and we would request this court to remind us to the district court for it to decide. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and the court will take a very short break. Thank you.
judges: Ezra, O'scannlain, Tallman